1
2
3
4
5
6
7
8  # UNITED STATES DISTRICT COURT
9  ## SOUTHERN DISTRICT OF CALIFORNIA
10
11

| UNITED STATES OF AMERICA, | CASE NO. 09cr1774 BTM |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |
| vs. | |
| CESAR MARTINEZ-ZAVALA, | |
| Defendant. | |

Defendant Cesar Martinez-Zavala (the "defendant" or "Martinez-Zavala") is charged with violating 8 U.S.C. § 1326. The defendant moves to dismiss the indictment on the basis that both his February 3, 2003 removal order and May 14, 2007 expedited removal order were invalid. For the reasons explained below, the Court **GRANTS in part** and **DENIES in part** the defendant's Motion to Dismiss the Indictment.

## I. BACKGROUND

Martinez-Zavala was born in Tijuana, Baja California, Mexico on or about July 11, 1981. (Def.'s Mot. to Dismiss Indictment ("MTD"), Ex. N at 21.) He is a Mexican citizen. (Id. at 28.)

On September 25, 1999, immigration authorities placed an immigration hold on Martinez-Zavala and interviewed him. (Govt.'s Resp. to Def.'s MTD ("Govt.'s Resp."), Ex. 9 at 108.) Initially, Martinez-Zavala indicated that he wished to depart voluntarily to Mexico.

1    (Id. at 109.)  Upon learning that his mother had an approved I-130 petition on file with the

2    Immigration and Naturalization Service, however, Martinez-Zavala appears to have changed

3    his mind and decided not to depart voluntarily.  (Id.)  On October 12, 1999, a Notice to

4    Appear was issued to Martinez-Zavala, charging him as an alien present in the United States

5    who had not been admitted or paroled pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  (Govt.'s

6    Resp., Ex. 11 at 119.)  Martinez-Zavala then attended seven hearings related to his removal

7    over the course of the next three years.

8         On October 21, 1999, Martinez-Zavala attended his first deportation proceeding, at

9    which he requested a bond hearing.  (Def.'s MTD, Ex. O at 3.)  On October 22, 1999, an

10   Immigration Judge granted Martinez-Zavala's request for bond and continued his master

11   calendar hearing to November 12, 1999.  (Govt.'s Resp., Ex. 11 at 124.)

12        On December 1, 1999, Martinez-Zavala attended his second hearing.  His counsel

13   indicated that he intended to apply for adjustment of status, cancellation of removal, or, "in

14   the alternative," voluntary departure.  (Def.'s MTD, Ex. P at 6.)  The IJ continued the

15   deportation proceedings to February 4, 2000.  (Govt.'s Resp., Ex. 11 at 130.)

16        On February 4, 2000, Martinez-Zavala attended his third hearing.  At this hearing,

17   Martinez-Zavala's counsel informed the IJ that he had submitted applications for adjustment

18   of status and cancellation of removal for his client.  The Government indicated that it had not

19   yet received records of Martinez-Zavala's prior convictions.  The IJ set the next hearing for

20   April 30, 2001.  (Govt.'s Resp., Ex. 11 at 133.)

21        On March 5, 2001, an IJ granted Martinez-Zavala's counsel's motion to withdraw.

22   (Govt.'s Resp., Ex. 14 at 159–165.)

23        On April 30, 2001, Martinez-Zavala attended his fourth hearing.  He represented to

24   the IJ that he was in the process of seeking new representation.  (Def.'s MTD, Ex. R at 13.)

25   The IJ then continued the hearing to October 26, 2001.  (Govt.'s Resp., Ex. 11 at 135.)

26        On July 25, 2001, an immigration hold was placed on Martinez-Zavala after his arrest

27   for various offenses.  (Govt.'s Resp., Ex. 15 at 167.)

28        On October 26, 2001, Martinez-Zavala again appeared in front of an IJ.  (Def.'s MTD,

09cr1774 BTM

Ex. S at 16.)  At that hearing, Martinez-Zavala indicated that he would like a continuance to seek representation.  (Id. At 17.)  The Government also informed the IJ that it was in the process of obtaining further conviction records.  (Id.)  The IJ set a master calendar hearing for May 15, 2002.  (Id.)

On May 15, 2002, Martinez-Zavala appeared in front of an IJ without counsel.  (Def. MTD, Ex. T at 20.)   He informed the IJ that although he told his counsel about the proceeding, the attorney did not show up.  (Id. at 20–21.)  The IJ discussed with Martinez-Zavala an approved I-130 petition filed on his behalf.  (Id. at 21.)  Martinez-Zavala indicated that both his mother and wife had submitted I-130 petitions for him.  (Id. at 21–22.)  The IJ continued the hearing to July 10, 2002.  (Id. at 25.)

On July 10, 2002, Martinez-Zavala appeared before an IJ, again without counsel. (Def.'s MTD, Ex. U at 27.)  At that time, the IJ set a merits hearing for February 24, 2003. (Id. at 27–28.)

On November 1, 2002, an immigration hold was placed on Martinez-Zavala after he was arrested on a probation violation.  (Govt.'s Resp., Ex. 16 at 171.)

On December 26, 2002, Martinez-Zavala was released on $7,500 bond.  (Govt.'s Resp., Ex. 11 at 143.)   On January 7, 2003, however, an immigration official ordered Martinez-Zavala detained.  (Id. at 144.)  Martinez-Zavala requested a redetermination of this custody decision by an IJ.  (Id.)  On January 17, 2003, an immigration official transferred Martinez-Zavala's proceedings to Lancaster, CA (Id. at 145), where he was being held at the Mira Loma Detention Facility (Id. at 149).

On February 3, 2003, a merits hearing took place in Lancaster, CA.  (Def.'s MTD, Ex. B at 2.)  Martinez-Zavala was represented by new counsel at this hearing.  The defendant's counsel informed the IJ "that if there was no possibility of a bond, he would like to be [] removed to Mexico voluntarily and avoid deportation."  (Def.'s MTD, Ex. B at 3.)  The IJ responded that because Martinez-Zavala had already filed applications for relief, the court was no longer dealing with "pre-hearing voluntary departure."  (Id.)  The Government presented evidence of two convictions: (1) misdemeanor theft under California Penal Code

§§ 484–488, and (2) willful infliction of corporal injury on a spouse under California Penal Code § 273.5(a). (Id. at 3–4.)  The IJ addressed an adjustment of status application filed by Martinez-Zavala's wife. (Def.'s MTD, Ex. B at 5.)  Martinez-Zavala indicated that he wished to return to Mexico to proceed with his visa processing there.  (Id.)  The IJ stated for the record that Martinez-Zavala did not appear to be eligible for cancellation of removal.  (Id. at 6.)  The IJ also stated that post-conclusion voluntary departure was not available to the defendant because his prior convictions which would prohibit him from establishing the requisite good moral character to qualify for that form of relief.  (Id.)  The IJ noted that while Martinez-Zavala may have been eligible for adjustment of status, he had chosen to withdraw his request for that form of relief.  (Id. at 6.)  The IJ then ordered the defendant removed to Mexico.  (Id. at 7.)

Martinez-Zavala's February 3, 2003 removal order was reinstated on three occasions: (1) July 8, 2004 (Govt.'s Resp., Ex. 17 at 175–183), (2) April 13, 2006 (Govt.'s Resp., Ex. 18 at 185–191), and (3) March 23, 2007 (Govt.'s Resp., Ex. 19 at 193–200).

On May 13 or May 14, 2007, Martinez-Zavala applied for admission to the United States at the San Ysidro, CA port of entry.  (Govt.'s Resp., Ex. 20 at 202–203.)  Martinez-Zavala admitted that he was not a citizen of the United States and that he previously had been deported. (Id. at 203.)  Martinez-Zavala was then served with the Notice and Order of Expedited Removal (form I-860) and summarily removed from the United States to Mexico.  (Id. at 210.)

## II.  DISCUSSION

Martinez-Zavala argues that the Court should dismiss the indictment because both his 2003 removal order and 2007 expedited removal order were invalid.  First, Martinez-Zavala claims that the 2003 order was invalid because the IJ incorrectly informed him that he was ineligible for voluntary departure.  Second, Martinez-Zavala contends that the 2007 order was invalid because the expedited removal process did not comport with Executive Office of Immigration Review regulations.

A.    Standard

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.  United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047–48 (9th Cir. 2004).  To sustain a collateral attack under Section 1326(d) a defendant must show that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) entry of the order was fundamentally unfair.  Id. at 1048.  "An underlying removal order is 'fundamentally unfair' if: '(1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'"  Id. (quoting United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998), cert. denied, 525 U.S. 849 (1998)).  A defendant bears the burden of showing that he was prejudiced.  United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994); United States v. Gonzalez-Valerio, 342 F.3d 1051, 1056 (9th Cir. 2003).

An alien is barred from collaterally attacking his underlying removal order as a defense to a Section 1326 charge "if he validly waived the right to appeal that order during the deportation proceedings."  United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001), cert. denied, 534 U.S. 879 (2001) (citations omitted).  The exhaustion requirement of Section 1326(d), however, "cannot bar collateral review of a deportation proceeding when the waiver of [the] right to an administrative appeal did not comport with due process."  Id. at 1183.  A waiver of the right to appeal a removal order does not comport with due process when it is not "considered and intelligent."  Id.  "Effective deprivation of an alien's administrative appeal serves to deprive him of the opportunity for judicial review as well."  United States v. Pallares-Galan, 359 F.3d 1088, 1096 (citing United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987)).

///

///

B. <u>February 3, 2003 Deportation Order</u>

Martinez-Zavala initially contends that he need not have exhausted his administrative remedies and that he was deprived of judicial review because his waiver of the right to appeal at his February 3, 2003 removal proceeding was not "considered and intelligent." Specifically, the defendant argues that the IJ erroneously informed him that he was ineligible for voluntary departure. "Where the record contains an inference that the petitioner is eligible for relief from deportation but the IJ fails to advise the alien of this possibility and give him the opportunity to develop the issue . . . an alien's waiver of his right to appeal his deportation order [is not] . . . 'considered and intelligent." <u>Pallares-Galan</u>, 359 F.3d at 1096.

Here, Martinez-Zavala asserts that the record contained an inference that he was eligible for "pre-conclusion" voluntary departure.  The Attorney General may permit an alien to voluntarily depart the United States at his own expense, *prior to the conclusion of removal proceedings*, if the alien is not deportable for having committed an aggravated felony or terrorist activities. 8 U.S.C. § 1229c(a)(1) (emphasis added).  The regulations enacted under the Immigration and Nationality Act further require that an alien seeking to apply for pre-conclusion voluntary departure must (1) make his request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing; (2) make no additional requests for relief or withdraw requests that have been made; (3) concede removability; (4) waive appeal of all issues; and (5) not have been convicted of or deportable for having committed an aggravated felony or terrorist activities.  8 C.F.R. §1240.26(b)(1)(i)(A)–(E). Additionally, an IJ may not grant pre-conclusion voluntary departure beyond 30 days after the master calendar hearing at which the case is initially calendared for a merits hearing.  8 C.F.R. §1240.26(b)(1)(ii).

The Government contends that Martinez-Zavala no longer remained eligible for pre-conclusion voluntary departure at his February 3, 2003 merits hearing, because he did not make his request and withdraw his other applications "prior to or at the master calendar hearing at which the case [was] initially calendared for a merits hearing," as required by 8 C.F.R. § 1240.26(b)(1)(i)(A).  Furthermore, even if Martinez-Zavala timely made his request

6

1    before the case was calendared for a merits hearing, the Government argues that the IJ

2    could not grant the defendant pre-conclusion voluntary departure on February 3, 2003,

3    because more than thirty days had passed since the case was initially calendared for a

4    merits hearing. 8 C.F.R. § 1240.26(b)(1)(ii).

5          Martinez-Zavala does not dispute that he did not apply for pre-conclusion voluntary

6    departure prior to or at the master calendar hearing at which his case was initially scheduled

7    for a merits hearing.[1]   The defendant also concedes that he did not withdraw his other

8    applications or waive his right to appeal until his merits hearing.  Martinez-Zavala argues,

9    however, that Section 1240.26(b) contravenes the plain language of Section 1229c.

10   Martinez-Zavala contends that his request for pre-conclusion voluntary departure, made at

11   his final merits removal hearing, was "prior to the completion of [the removal] proceedings,"

12   within the plain meaning of Section 1229c(a)(1).  Without reaching the issue of whether the

13   Section 1240.26(b) contravenes the plan language of Section1229c, the Court determines

14   that Martinez-Zavala's procedural due process rights were violated because the IJ failed to

15   timely inform the defendant of his apparent eligibility for pre-conclusion voluntary departure.

16         Failure to inform an alien of his "apparent eligibility" for relief "is a denial of due

17   process that invalidates the underlying deportation proceeding."  Muro-Inclan, 249 F.3d at

18   1183–1184. "'Apparent eligibility' is a reasonable possibility that the alien may be eligible for

19   relief."  Bui v. Immigration and Naturalization Service, 76 F.3d 268, 270 (9th Cir. 1996).

20   Here, had Martinez-Zavala made the requisite waivers and withdrawals prior to the

21   scheduling of his initial merits hearing, it is reasonably possible that he would have been

22   eligible for *pre*-conclusion voluntary departure.  Significantly, it was not reasonably possible

23   that Martinez-Zavala would have been eligible for *post*-conclusion voluntary departure.

24         To qualify for post-conclusion voluntary departure, an alien must additionally prove

25

26         [1]    The Government claims that the IJ initially scheduled a merits hearing at
     Martinez-Zavala's February 4, 2000 hearing.  (Govt.'s Resp. at 17.)  The record does not
27   make clear that the IJ initially scheduled a merits hearing on this date.   Nevertheless,
     because the Court determines below that the IJ erred by failing to inform the defendant of
28   his apparent eligibility for pre-conclusion voluntary departure at *any* time before his merits
     hearing, the specific date on which it was scheduled is not of consequence to this motion.

1   that he has been physically present in the United States for at least one year immediately

2   preceding the date that the notice to appear was served, and that he has been "a person of

3   good moral character" for at least five years immediately preceding his application for relief.

4   8 U.S.C. § 1229c(b).  At Martinez-Zavala's final merits hearing, however, the IJ expressly

5   found that he could not prove good moral character for the preceding five years due to his

6   prior convictions. (Def.'s MTD, Ex. B at 6.) As a result, the defendant was ineligible for post-

7   conclusion voluntary departure.  Thus, the distinction between pre-conclusion and post-

8   conclusion voluntary departure was crucial for Martinez-Zavala.

9        Despite the consequential differences between pre- and post-conclusion voluntary

10   departure, none of the IJs that Martinez-Zavala appeared before ever distinguished  the two

11   forms of relief or explained their differences to him.  At the defendant's initial master calendar

12   hearing on December 1, 1999, his counsel at the time stated that Martinez-Zavala intended

13   to apply for voluntary departure "in the alternative" to adjustment of status and cancellation

14   of removal.  Although he was apparently eligible for solely *pre*-conclusion voluntary

15   departure, the record does not show that the IJ explained to Martinez-Zavala that he could

16   only apply for this relief prior to the scheduling of his merits hearing, and only if he withdrew

17   his other applications. Furthermore, during the following six hearings leading up to Martinez-

18   Zavala's final merits hearing, no other IJ ever explained to him that he could not, in fact,

19   apply for voluntary departure "in the alternative" unless he withdrew his other applications

20   and expressly applied for this relief before an IJ scheduled his merits hearing.  Given that no

21   IJ ever explained the distinction between pre- and post-conclusion voluntary departure to the

22   defendant, it is not surprising that he believed he was still eligible to voluntarily depart the

23   country at his final hearing.

24        Thus, the Court finds that the IJ's failure to timely advise Martinez-Zavala of his

25   apparent eligibility for *pre*-conclusion voluntary departure, and of the differences between

26   pre-and post-conclusion voluntary departure, violated his right to procedural due process.

27   See Zamudio-Pena v. Holder, 2009 WL 1396824, at *2 (9th Cir. 2009) (holding that alien's

28   procedural due process rights were violated where IJ failed to properly inform him of his

09cr1774 BTM

1   apparent eligibility for pre-conclusion voluntary departure and of the differences between pre-

2   conclusion and post-conclusion voluntary departure, and his prior convictions precluded his

3   eligibility for post-conclusion voluntary departure); see also United States v. Basulto-Pulido,

4   219 Fed. Appx. 717, 718–719 (9th Cir. 2007) (holding that alien's procedural due process

5   rights were violated when IJ failed to explain to him what pre-conclusion voluntary departure

6   was or to inform him of his apparent eligibility for it at his last master calender hearing).

7         Martinez-Zavala has also sufficiently demonstrated prejudice.  To prove prejudice, the

8   defendant must only show "that he had a plausible ground for relief from deportation."

9   Ubaldo-Figueroa, 364 F.3d at 1050 (internal quotation marks omitted).  Prejudice occurs

10  "where an alien's rights are violated 'in a manner so as potentially to affect the outcome of

11  the proceedings.'" Campos-Sanchez v. I.N.S., 164 F.3d 448, 450 (9th Cir. 1999) (quoting

12  United States v. Cerda-Pena, 799 F.2d 1374, 1379 (9th Cir. 1986).  Here, the IJ's failure to

13  inform the defendant of his apparent eligibility for pre-conclusion voluntary departure prior

14  to the master calendar hearing at which his merits hearing was scheduled "potentially

15  affected the outcome of the proceedings."  The Government correctly points out that pre-

16  conclusion voluntary departure is a discretionary form of relief.  8 U.S.C, § 1229c(a)(1) ("The

17  Attorney General *may* permit an alien voluntarily to depart the United States . . ." (emphasis

18  added)).   The Court cannot conclude that, had Martinez-Zavala timely submitted his

19  application, he certainly would have been granted pre-conclusion voluntary departure.

20  Nonetheless, "[i]n order to show prejudice, [the defendant] is not required to *prove* that he

21  would have received discretionary relief from deportation."  United States v. Jimenez-

22  Marmolejo, 104 F.3d 1083, 1086 (9th Cir. 1996) (emphasis added).  Rather, Martinez-Zavala

23  must only provide the "something more" sufficient to make it *plausible* that he would have

24  received discretionary relief.  See United States v. Arrieta, 224 F.3d 1076, 1082–83 (9th Cir.

25  2000).

26         The Court finds that Martinez-Zavala has presented sufficient factors that would have

27  supported and made plausible discretionary relief pursuant to Section 1229c(a)(1).   At the

28  time of his deportation, Martinez-Zavala had resided in the United States for twenty-two

9

years, close to his entire life.  Moreover, he had strong family ties in the United States.  He was married to a United States citizen, is the father a United States citizen son, and his mother is a naturalized United States citizen.  See Basulto-Pulido 219 Fed. Appx. at 719 (finding that defendant's common law marriage to a United States citizen and his three United States citizen children provided, alone, the "something more" required to prove that he had a plausible claim for voluntary departure).  Martinez-Zavala also claims that he would have been able to pay for his voluntary departure to Mexico.  Finally, because Section 1229c(a) allows IJs to "quickly and efficiently dispose of numerous cases on their docket, where appropriate," In re Arguellos-Campos, 22 I. & N. Dec. 811, 817 (BIA 1999), the IJ may have favorably viewed a pre-conclusion voluntary departure application by Martinez-Zavala.  See Zamudio-Pena, 2009 WL 1396824, at *2 (finding prejudice where IJ failed to properly inform alien about pre-conclusion voluntary departure, in part because the IJ "would have likely looked favorably upon a request for pre-hearing voluntary departure" given that it would have allowed the IJ to quickly and efficiently dispose of the case).

Thus, Martinez-Zavala had a plausible claim for pre-conclusion voluntary departure. Because he was apparently eligible for pre-conclusion voluntary departure and the IJ failed to adequately inform him of this relief, Martinez-Zavala's removal proceedings violated his right to procedural due process.  His waiver of his right to appeal was not considered and intelligent, he need not have exhausted his administrative remedies, and he was improperly denied the opportunity for judicial review.  The Court, thereby, finds that the defendant's removal proceeding was fundamentally unfair and that the underlying February 3, 2003 removal order was invalid.  The Court, therefore, **GRANTS** the defendant's Motion insofar as it seeks to preclude the Government from relying on the February 3, 2003 removal order to support a conviction under 8 U.S.C. § 1326.

C.    May 14, 2007 Expedited Removal Order

Martinez-Zavala also challenges his May 14, 2007 expedited removal order.  The defendant argues that the Government may not rely on this order because the expedited

09cr1774 BTM

removal process did not comply with the applicable Executive Office for Immigration Review ("EOIR") regulations.  The Government, however, contends that the Court lacks jurisdiction to review the May 14, 2007 expedited removal order pursuant to 8 U.S.C. § 1225(b)(1)(D).

Section 1225(b)(1)(D) holds that "in any action brought against an alien under . . . section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)."  Subparagraph (A)(i) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(c) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review . . . ."  Martinez-Zavala does not dispute that he was ordered removed as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(ii) (falsely claiming citizenship) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (immigrant who at the time of application for admission is not in possession of valid entry or travel documents).  Thus, the defendant's order of removal was entered under subparagraph (A)(i).  Accordingly, the Government argues that Section 1225(b)(1)(D) strips this Court of jurisdiction to consider the validity of Martinez-Zavala's May 14, 2007 removal order.

Nonetheless, even if the Court were to find that the expedited removal proceeding here violated Martinez-Zavala's procedural due process rights, he has not adequately demonstrated prejudice as a result of the alleged violation.  Therefore, the Court does not reach the question of whether it properly has jurisdiction to consider the defendant's Section 1326(d) attack on his removal order in spite of Section 1225(b)(1)(D).  See United States v. Lopez-Vasquez, 227 F.3d 476, 486 (5th Cir. 2000) (declining to determine whether Section 1225(b)(1)(D) is constitutional and finding that the provision does not preclude a district court from determining that the prejudice requisite for a Mendoza-Lopez claim has *not* been met).

Martinez-Zavala claims prejudice because, had the examining officer followed regulations and given him notice of the charges against him and the nature of the proceedings, he could have withdrawn his application for admission and departed immediately from the United States pursuant to 8 U.S.C. § 1225(a)(4).  Section 1225(a)(4)

09cr1774 BTM

provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."   In Matter of Gutierrez, however, the Board of Immigration Appeals ("BIA") held that an IJ should not permit an alien to withdraw his application for admission unless the alien, "in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors *directly relating to the issue of admissibility* indicate that granting withdrawal would be in the interest of justice (i.e. that justice would be ill served if an order of exclusion was entered)."   19 I. & N. Dec. 562, 564–565 (BIA 1988) (emphasis added). INS regulations implementing 8 U.S.C. 1225(a)(4) essentially codify the Matter of Gutierrez standard.   See 8 C.F.R. § 1240.1(d) ("[a]n immigration judge shall not allow an alien to withdraw an application for admission unless the alien, in addition to demonstrating that he or she possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice").   Matter of Gutierrez also specifically found that a "balancing of the equities test is not an appropriate method by which to determine whether an alien merits permission to withdraw an application for admission . . . a narrower focus [is] intended."   19 I. & N. Dec. at 564.   Thus, in order to demonstrate prejudice, the defendant must show that it was reasonably possible that factors directly relevant to admissibility indicated that allowing him to withdraw his application would be in the interest of justice.

Martinez-Zavala, however, presents no facts or circumstances specifically relating to the issue of admissibility to demonstrate that granting withdrawal would have been in the interest of justice at the time of his May 14, 2007 expedited removal.   The only factor Martinez-Zavala identifies in his motion that relates to admissibility is his relationship to his United States citizen children and family members.   Family ties alone do not directly relate to admissibility, and, therefore, generally do not warrant withdrawal of an application for admission.   In Matter of Gutierrez, the BIA overturned the IJ's decision granting withdrawal

09cr1774 BTM

1    to Gutierrez, despite his strong family ties.  Gutierrez had a lawful permanent resident wife,

2    one United States citizen child, and his wife was pregnant with another child.  Unlike the

3    defendant here, Gutierrez had been continuously employed in the United States and did not

4    have a criminal record.  Nonetheless, Gutierrez could not point to facts or circumstances

5    *relating to admissibility* that showed that granting withdrawal would be in the interest of

6    justice.  He had no pending applications for admission and could not show that he would be

7    admissible if permitted to withdraw his application and leave the country.  Thus, Martinez-

8    Zavala's family ties are not enough to make it reasonably possible that the IJ would have

9    granted withdrawal in the interest of justice.  See also Sharma v. Reno, 902 F.Supp. 1130,

10   1140–1141 (N.D. Cal. 1995) (upholding IJ and BIA decisions denying alien the opportunity

11   to withdraw his application for admission because his marriage to a United States citizen,

12   permanent legal resident children, and business in the United States were factors relevant

13   to a balancing of the equities test, not the standard outlined in Matter of Gutierrez).

14        Moreover, several factors relating to admissibility weighed against allowing the

15   defendant to withdraw his application for admission.  Martinez-Zavala admitted to the

16   immigration inspector that he had no applications or petitions for lawful United States entry

17   pending with the INS.  (Govt.'s Resp. to Def.'s MTD, Ex. 21, Att. A at 213.)  Martinez-

18   Zavala's false claim of citizenship would have rendered him inadmissible were he to apply

19   for future admission, 8 U.S.C. § 1182(a)(6)(C)(ii), and he has not identified any waivers of

20   inadmissibility for which he was eligible.  Thus, the Court cannot identify any reasons, directly

21   relating to the issue of admissibility, that show that justice required that the defendant be

22   permitted to withdraw his application for admission pursuant to Section 1225(b)(4).

23   Therefore, Martinez-Zavala has not met his burden of demonstrating prejudice and any due

24   process violation did not potentially affect the outcome of his proceedings.  The Court,

25   thereby, **DENIES** the defendant's Motion insofar as it seeks to preclude the Government from

26   relying on the May 14, 2007 removal order to support a conviction under 8 U.S.C. § 1326.

27

28                                   **III.  <u>CONCLUSION</u>**

1    For the reasons explained above, the Court **GRANTS** the defendant's Motion insofar
2   as it seeks to preclude the Government from relying on the February 3, 2003 removal to
3   support a conviction under 8 U.S.C. § 1326.  The Court **DENIES** the defendant's Motion
4   insofar as it seeks to preclude the Government from relying on the May 14, 2007 removal
5   order to support a conviction under 8 U.S.C. § 1326.  The Government may not rely on the
6   2003 removal to establish the elements of deportation and removal required for a conviction
7   under Section 1326.

8
9   **IT IS SO ORDERED.**

10  DATED:  August 11, 2009

11

12                                           Honorable Barry Ted Moskowitz
                                             United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cr1774 BTM