# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br>vs.<br>CESAR MARTINEZ-ZAVALA,<br>                             Defendant. | CASE NO. 09cr1774 BTM<br><br>**ORDER DENYING MOTIONS TO RECONSIDER** |

On August 11, 2009, the Court entered an Order granting in part and denying in part the Defendant Cesar Martinez Zavala's (the "Defendant" or "Martinez-Zavala") motion to dismiss the indictment. Both the Government and the Defendant now move for reconsideration of the Court's August 11, 2009 order. For the reasons explained below, both the Government's and the Defendant's Motions to Reconsider are **DENIED.**

## I. BACKGROUND

The Court discussed the factual background of this case in detail in its August 11, 2009 Order ("Order"). The Court hereby incorporates here the factual background as set forth in its earlier Order.[1]

---

[1] In one of the Government's footnotes, it raises three concerns with the factual background as set forth in the Court's previous Order. First, the Government finds inaccurate the Court's statement that Martinez-Zavala "attended seven hearings related to his removal over the course of the next three years." (Order at 2:6–7.) The Defendant attended seven hearings leading up to his eighth and final hearing on February 3, 2003. The Court described all eight hearings in the factual background of its Order.

The Court's Order granted the Defendant's motion to dismiss the indictment insofar as he sought to preclude the Government from relying on the February 3, 2003 removal order to support a conviction under 8 U.S.C. § 1326. The Court found that the Defendant's due process rights were violated because the Immigration Judge ("IJ") at his initial removal proceeding failed to explain to him the differences between pre-conclusion and post-conclusion voluntary departure, and failed to inform him of his apparent eligibility for pre-conclusion voluntary departure. As a result, the Court held that the Defendant's underlying removal proceedings resulting in the February 3, 2003 removal order were fundamentally unfair.

The Court's Order also denied the Defendant's motion to dismiss the indictment, however, insofar as it sought to preclude the Government from relying on the May 14, 2007 expedited removal order to support a conviction under Section 1326. The Court declined to reach the issue of the constitutionality of 8 U.S.C. § 1225(b)(1)(D). The Court determined that, even assuming Section 1225(b)(1)(D) was unconstitutional, the Defendant's collateral attack on the May 14, 2007 expedited removal order would fail on the merits.

### III. DISCUSSION

A district court may reconsider its prior ruling on a pretrial motion in a criminal case. United States v. Smith, 389 F.3d 944, 948 (9th Cir. 2004). The Court addresses below each of the Government's and the Defendant's arguments for reconsideration.

///

///

---

Second, the Government alleges that Martinez-Zavala attended his first hearing on October 22, 1999, rather than on October 21, 1999, as the Court stated. The Court relied upon the Defendant's transcript records, which indicate that the first hearing took place on October 21, 1999. (See Def.'s MTD, Ex. O.) The precise date is of no moment to the reasoning of the Order.

Third, the Government claims that the Court inaccurately stated that the IJ granted the Defendant's counsel's motion to withdraw on March 5, 2001. Upon review, the Court notes that the record indicates that the IJ signed the motion to withdraw on February 27, 2001, and it was filed on March 5, 2001. (See Govt.'s Resp., Ex. 11 at 132.) Again, the exact date did not impact the Court's analysis of the issues.

A.     The Government's Motion for Reconsideration

The Government argues for reconsideration based on five grounds. The Court has considered and rejects each of the Government's grounds for reconsideration.

    1.     The Defendant's application for pre-conclusion voluntary departure could have potentially affected the outcome of the proceedings.

First, the Government contends that the Court clearly erred in finding that the IJ's failure to inform the Defendant of the differences between pre- and post-conclusion voluntary departure "potentially affected the outcome of the proceedings." The Government argues that pre-conclusion voluntary departure offered no "benefit" to Martinez-Zavala, so he would not have sought this form of relief even if informed of its particular requirements.

At the Defendant's first hearing on October 22, 1999[2], his record contained an inference that he was eligible for pre-conclusion voluntary departure. He had not then been convicted of, nor was he removable for, having committed an aggravated felony or terrorist activities. See 8 U.S.C. § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection . . . if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of [title 8 of the United States Code]."). In contrast, it was less clear that the Defendant would have been eligible for post-conclusion voluntary departure. Post-conclusion voluntary departure requires a showing that the applicant has been "a person of good moral character" for at least five years immediately preceding his application for relief. See 8 U.S.C. § 1229c(b). At the time of his first hearing, Defendant had been convicted of carrying a concealed dirk or dagger on his person under California Penal Code § 12020(a)(4), and had two juvenile adjudications on his record. (Govt.'s Resp., Ex. 4 at 41.) Although not impossible, it would likely have been more difficult for the Defendant to obtain post-conclusion voluntary departure than pre-conclusion voluntary departure.

---

[2] As noted in the preceding footnote, the date of this hearing is unclear from the record. The Government contends that the hearing took place on Oct. 22, 1999. The Court will use that date as the hearing date for the purpose of reconsidering its prior Order.

The IJ at the Defendant's first hearing never explained that two forms of voluntary departure existed, nor did the IJ describe their very different requirements.  Additionally, the IJ never informed Martinez-Zavala that he would have to withdraw his other applications for relief and apply for pre-conclusion voluntary departure before his merits hearing was scheduled in order to retain eligibility.  The due process violation was complete when the IJ failed to explain these important distinctions between pre- and post-conclusion voluntary departure to Defendant at his first hearing.  Absent this failure, the Defendant may have timely applied for, and been granted, pre-conclusion voluntary departure.  Thus, this due process violation potentially affected the outcome of the proceedings.

The Government contends that even if the IJ had properly explained pre-conclusion voluntary departure to the Defendant, he would not have applied for this form of relief because it would have been more advantageous for him to remain in the United States. Specifically, the Government initially argues that, in order for Martinez-Zavala to have remained eligible for adjustment of status, he was required to stay in the United States until December 21, 2000 pursuant to 8 U.S.C. § 1255(i)(1)(C).  The Government next contends that the IJ could not have inferred from the Defendant's record that he was not subject to a reentry bar following pre-conclusion voluntary departure. Finally, the Government claims that the Defendant never would have chosen voluntary departure unless he was faced with custody in the alternative.

The Court disagrees with the Government's arguments.  First, provision (i)(1)(C) of Section 1255 did not become effective until December 21, 2000.  See 8 U.S.C. § 1255 (2000). At the time of Defendant's first hearing on October 22, 1999 Section 1255(i) provided that an alien who was physically present in the United States, who had entered the United States without inspection, and who was the beneficiary of petition under 8 U.S.C. § 1154 filed with the Attorney General on or before January 14, 1998, was eligible to apply to the Attorney General for the adjustment of his status to that of an alien lawfully admitted for permanent residence.  See 8 U.S.C. § 1255 (1997).  The Government's records indicate that the Defendant's mother filed an I-130 petition on January 14, 1998. (Govt.'s Resp., Ex. 10.)  At

the time of the Defendant's initial proceeding on October 22, 1999, therefore, Section 1255(i) did not require that the Defendant be physically present in the United States on any future date in order to apply for adjustment of status.

At removal proceedings following the enactment of provision (i)(1)(C) of Section 1255 on December 21, 2000, the Government's position is correct: Defendant could have obtained adjustment of status only if he was physically present in the United States on December 21, 2000. Nonetheless, at the Defendant's *first hearing* on October 22, 1999, his record contained an inference that he was eligible for pre-conclusion voluntary departure, and it was not necessarily less beneficial for him to apply for this form of relief than to pursue adjustment of status in the United States.

Second, during oral argument on the instant Motions, the Government suggested that the IJ at the Defendant's first hearing would have assumed that the Defendant would not have chosen pre-conclusion voluntary departure because of the additional assumption that he would have been subject to a three or ten year reentry bar under 8 U.S.C. § 1182(a)(9)(B). Martinez-Zavala was not subject to a reentry bar on October 22, 1999, because he had been unlawfully present in the United States for less than 180 days. See 8 U.S.C. § 1182(a)(9)(B)(i)(I). Section 1182(a)(9)(B)(iii)(I) excludes time spent unlawfully in the United States as a minor when determining the period of unlawful presence for the purpose of a reentry bar. The "Record of Deportable/Inadmissible Alien" created for Martinez-Zavala on September 26, 1999 specified that his date of birth was July 11, 1981. (Govt.'s Resp., Ex. 9.) Based on this record, the IJ at the first hearing on October 22, 1999 could have determined that Martinez-Zavala had accumulated less than 180 days of unlawful presence since turning eighteen years old. Accordingly, Martinez-Zavala would not have been subject to any reentry bar had he applied for and been granted pre-conclusion voluntary departure at his hearing on October 22, 1999.

Third, the Government argues that the Court should infer from the record that the Defendant would not have applied for pre-conclusion voluntary departure unless he was faced with custody in the alternative. The Government also suggested in oral argument that

the Defendant would not have applied for pre-conclusion voluntary departure because of the impending birth of his son.[3] The Court need not speculate as to whether the Defendant would have *actually* applied for pre-conclusion voluntary departure had the IJ informed him of his eligibility for this form of relief at his first hearing. It is enough that the IJ's failure to do so *potentially* affected the outcome of the proceedings and, therefore, violated his due process rights. The Court will not guess as to which form of relief would have been the most personally preferable for Martinez-Zavala had the IJ adequately explained his apparent eligibility for all forms of relief.

Contrary to the Government's arguments, the Court concludes that pursuing pre-conclusion voluntary departure posed a potential benefit to the Defendant at the time of his initial removal proceeding on October 22, 1999. The IJ's failure to inform him about this specific form of relief and its distinctions from post-conclusion voluntary departure violated his right to due process and potentially affected the outcome of his proceedings.

2.  <u>An IJ's failure to inform an alien of his eligibility for relief denies the alien due process even if the alien is represented by counsel.</u>

Second, the Government argues that the Court clearly erred by failing to consider that counsel represented Martinez-Zavala at his first hearing. The Government contends that the "heightened standard" requiring an IJ to inform an alien of his apparent eligibility for relief applies *only* where an alien is not represented by counsel in a removal proceeding. The Court disagrees. The Government cites no legal authority qualifying the obligation that an IJ inform an alien of his apparent eligibility for relief on whether counsel is present. Indeed, as the Government notes, the Ninth Circuit Court of Appeals has determined that an IJ's failure to "inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding," even in a case where the defendant was represented by counsel. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004). Thus, the Court finds no error in its determination that the Defendant's

---

[3] Defendant's son was born on January 7, 2000. (Def.'s MTD, Ex. E at 14.)

due process rights were violated at his first hearing even though he had representation.

    3.    <u>The Court's ruling does not require an IJ to choose between informing an alien of his eligibility for relief and preserving the alien's right to counsel.</u>

Third, the Government contends that the Court's ruling would have required an IJ to violate Martinez-Zavala's right to counsel under 8 U.S.C. § 1362 by forcing him to choose between applying for pre-conclusion voluntary departure and seeking a continuance to obtain counsel. The Government misconstrues the Court's Order. The Court found that Martinez-Zavala's due process rights were violated at his very first removal proceeding, when he was still represented by counsel. In subsequent proceedings, later IJs failed to remedy this violation by informing Martinez-Zavala of his apparent eligibility for pre-conclusion voluntary departure while it was still a viable form of relief for him. There is no reason why an IJ at a later pre-merits hearing could not have informed the Defendant of his apparent eligibility for pre-conclusion voluntary departure, explained its differences from post-conclusion voluntary departure, and also granted the Defendant's request for a continuance to seek counsel. The IJ simply could have postponed scheduling the merits hearing until Martinez-Zavala had both the opportunity to seek counsel and a chance to develop the issue of his eligibility for pre-conclusion voluntary departure.

    4.    <u>An IJ's failure to inform an alien of his eligibility for a discretionary form of relief violates due process under the law of this Circuit.</u>

Fourth, the Government argues that the Court clearly erred in finding a procedural due process violation arising out of the IJ's failure to inform the Defendant of his apparent eligibility for a discretionary form of relief. The Ninth Circuit Court of Appeals has held that an IJ's failure to inform an alien of his apparent eligibility for a discretionary form of relief from removal constitutes a violation of due process. <u>See</u> <u>United States v. Ortiz-Lopez</u>, 385 F.3d 1202, 1204 (9th Cir. 2004) (failure to inform defendant of his eligibility for voluntary departure under 8 U.S.C. § 1229c(a) violated his due process rights). The Court did not err in finding that the IJ's failure to inform Martinez-Zavala of a discretionary form of relief violated his right

to due process.

### 5. The Defendant made a prima facie showing of prejudice.

Fifth, the Government claims that the Court erred in its analysis of whether the Defendant properly made a prima facie showing of prejudice. The Court agrees with the Government that it erred in evaluating the Defendant's prejudice showing at the time of his final hearing, on February 3, 2003, rather than at the time of his initial hearing, on October 22, 1999, at which the due process violation originally occurred. In the interim between October 22,1999 and February 3, 2003, Martinez-Zavala acquired a United States citizen wife and children, and his mother became a naturalized citizen. At the time of his initial removal proceeding, however, the Defendant had resided in the United States for a shorter period of time, was unmarried, and his mother was only a legal permanent resident. Nevertheless, the Court finds that it did not err in its prejudice determination.

As the Court stated in its Order, "[i]n order to show prejudice, [a defendant] is not require to *prove* that he would have received discretionary relief from deportation . . . Instead, [h]e only needs to show that he had plausible grounds for relief." United States v. Jimenez-Marmolejo, 104 F.3d 1083, 1086 (9th Cir. 1996) (emphasis added). Pre-conclusion voluntary departure only requires that the applicant not have been convicted of or deported for having committed an aggravated felony or terrorist activities, and that the applicant pay for his own departure. See 8 U.S.C. § 1229c(a)(1). The Government does not dispute that Martinez-Zavala adequately demonstrated that he met both statutory requirements for pre-conclusion voluntary departure at the time of his first removal hearing.

The Government argues, however, that the IJ would not have exercised his discretion in Martinez-Zavala's favor and granted him voluntary departure. In determining whether to grant voluntary departure, IJs must weigh both favorable and unfavorable factors. Campos-Granillo v. I.N.S., 12 F.3d 849, 852 (9th Cir. 1993).

> Favorable factors include: family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or the petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the

existence of business or property ties; evidence of value and service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character. Unfavorable factors include: the nature and underlying circumstances of the exclusion or deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. Id. at 852 n. 3.

At the time of his initial hearing, factors favoring the exercise of discretion in the Defendant's favor included his family ties in the United States to his mother and father, who were lawful permanent residents, and his long duration of eighteen years in the country, beginning at a very young age. (See Govt.'s Resp., Ex. 9 at 108; Def.'s MTD, Ex. E at 15.) Martinez-Zavala turned eighteen only shortly over two months prior to his first removal proceeding. Also, it appears that Martinez-Zavala was employed as a laborer at that time. (See Govt.'s Resp., Ex. 9 at 108.) Unfavorable factors included his juvenile adjudications for burglary under California Penal Code § 459 and possession of a firearm under California Penal Code § 12020(a), and his adult conviction for possession of a concealed dirk or dagger under Section 12020(a). The Defendant's adult criminal conviction occurred shortly before his first removal proceeding, so the recency of that conviction weighed against him. The Court finds the determination of prejudice in this matter to be a difficult one. In October, 1999, an IJ could have found both favorable and unfavorable factors influencing the exercise of discretion in Martinez-Zavala's case. The Court cannot say with certainty how an IJ would have chosen to exercise his discretion. However, because Martinez-Zavala met both statutory requirements, and had favorable and unfavorable factors weighing relatively equally in his case, the Court finds that he has demonstrated "plausible grounds for relief." Thus, the Court rejects the lack of prejudice as a ground for reconsideration of its order.

For the reasons set forth above, the Court **DENIES** the Government's Motion to Reconsider.

B.   <u>The Defendant's Motion for Reconsideration</u>

The Defendant also moves the Court to reconsider its Order. Martinez-Zavala argues that the Court erred in finding that the Government may use his May 14, 2007 expedited

removal order to support a conviction under Section 1326.

The Defendant contends that 8 U.S.C. § 1225(b)(1)(D) strips district courts of jurisdiction to review the validity of an expedited removal order on a collateral attack to a Section 1326 indictment. "A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." Ubaldo-Figueroa, 354 F.3d at 1047–48; see also United States v. Mendoza-Lopez, 481 U.S. 828, 837–38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding."). Martinez-Zavala argues that because he has a due process right under the Constitution to challenge a determination made in an administrative proceeding that is used as a predicate for a criminal prosecution, and Section 1225(b)(1)(D) precludes such a challenge, the Court should preclude the Government from relying on his expedited removal order. He misunderstands the remedy that would apply when a constitutional right conflicts with a statute. Under Marbury v. Madison, "courts may not be forced to give effect to a law that conflicts with the Constitution." Crater v. Galaza, 508 F.3d 1261, 1266 (9th Cir. 2007). Rather, where a law conflicts with the Constitution, "the [C]onstitution, and not such ordinary act, must govern the case to which they both apply." Marbury, 1 Cranch 137, 178 (1803). Thus, if Defendant's contentions were correct, the Court would be required to invalidate Section 1225(b)(1)(D) as unconstitutional rather than simply preclude the government from replying upon his expedited removal order.

However, the Court's Order did not, nor does it need to now, reach the issue of the constitutionality of Section 1225(b)(1)(D). Even if the Court found the provision unconstitutional and allowed the Defendant to collaterally attack his expedited removal order, his attack would fail. As the Court explained in its Order, the Defendant cannot demonstrate prejudice arising from any constitutional deficiencies in the expedited removal process. The Defendant offered *no* facts or circumstances directly related to the issue of admissibility which would have permitted an IJ to allow him to withdraw his application for admission.

Therefore, the Court finds that it did not err in its determination that the Government may rely upon Martinez-Zavala's expedited removal order to support a conviction under Section 1326. The Court **DENIES** the Defendant's Motion to Reconsider.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES** the Government's Motion to Reconsider and **DENIES** the Defendant's Motion to Reconsider.

**IT IS SO ORDERED.**

DATED: October 7, 2009

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge